**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALLAN KATZ, on behalf of himself and all others similarly situated, | Civil Action No:  1:24-CV-955 |
| Plaintiff, | |
| v. | **CLASS-ACTION COMPLAINT** |
| ESURANCE PROPERTY AND CASUALTY INSURANCE COMPANY and NATIONAL GENERAL INSURANCE COMPANY, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff, Allan Katz ("Plaintiff"), on behalf of himself and all other similarly situated, hereby alleges against Defendant Esurance Property and Casualty Insurance Company ("EPC") and Defendant National General Insurance Company ("National General") (collectively, "Defendants") the following upon his own knowledge, or where he lacks personal knowledge, upon information and belief including the investigation of his counsel.

## NATURE OF THE ACTION

1.      This class action against Defendants EPC and National General, its claims administrator, arises out of their uniform misconduct related to the payment of sale tax in the event an insured's auto is declared a total loss.[1]  Specifically, EPC systemically breaches its standardized personal auto insurance policies with its insureds (including Plaintiff) that expressly state the "applicable sales tax" or the "sales tax that applies" will be paid for damaged or stolen autos

---

[1] A total loss occurs when a vehicle cannot be safely repaired or is considered economically impractical                    to                    repair.                *See* https://pm.esurance.com/XPMWeb/HelpInfo.aspx?DefNo=Claim+Detail+Total+Loss.

declared a total loss.[2]  This express policy provision is in all of EPC's standardized personal auto policies it issues in at least 22 states.  Despite the clear and unambiguous sales tax provision in EPC's standardized personal auto policies, EPC routinely fails to pay the full applicable sales tax as part of total loss claim payments to its insureds, and particularly on total loss claims for leased autos.   Indeed, EPC's standard practice is to pay no sales tax **at all** for totaled leased autos.

2.    The same express sales tax provisions also appear in many of the standard form personal auto policies issued by EPC's parent company, Esurance Insurance Company's ("EIC").  Like EPC, EIC also fails routinely to pay the full applicable sales tax on total loss claims, and particularly on total loss claims for leased autos.  Likewise, EIC's standard practice is to pay no sales tax **at all** for totaled leased autos.

3.    Both EPC and EIC use Defendant National General as their claims administrator to, among other tasks: process claims, obtain third-party valuations of total loss autos to determine their actual cash value ("ACV") at the time of the loss, approve total loss claims, calculate the amounts due for total loss claims under the applicable EPC and EIC personal auto policies, inform insureds and any loss payees of the determination of the total loss claims and the amounts to be paid under the applicable EPC and EIC policies, and initiate payment for total loss claims made on EPC and EIC personal auto policies.  In so doing, National General follows EPC's and EIC's uniform policy and practice of not paying the full applicable sales tax on the total loss auto despite the standardized express policy provisions requiring payment of the applicable sales tax.  In other words, National General acts in concert with, conspired with, and aides and abets EPC's and EIC's

---

[2]  In most of EPC's standardized personal auto policies, the actual contract provision reads: "If **"we"** pay for **"loss"** in money, **"our"** payment will include the applicable sales tax for the damaged or stolen property." *See e.g.,* Exhibit 1 (Plaintiff's EPC policy).  As explained below, however, there are a small number of states in which EPC varies this language in its standardized personal auto policies in non-material ways such as changing "applicable sales tax" to read the "sales tax that applies."

breach of its standardized personal auto policies by not paying the applicable sales tax on total loss claims and thereby also tortiously interferes with those contractual relations.

4.      Moreover, EPC and EIC, through its claims administrator, National General, mispresent to insureds in written settlement statements sent to them that their total loss claims will include the full applicable sales tax for the totaled auto or otherwise inaccurately represents the amounts owed for their total loss claim.  Defendants further their deception by providing insureds with market valuation reports generated by a third-party vendor, which mirror the figures stated on the settlement statements and further cement in insureds' minds that the "applicable sales tax" or "sales tax that applies" for the totaled auto is being paid.

5.      As demonstrated by Plaintiff's own experiences, more fully detailed below, for at least totaled leased autos, EPC and EIC, through its claims administrator National General, take active steps to conceal the fact that they pay no sales tax as part of the insureds' claim payment by sending them settlement statements and valuation reports implying the full sales tax will be paid to their lessor, but then advising the lessor that the sales tax will be paid to the insured.  This conduct results in the lessor agreeing to accept payment on the total loss claim minus the sales tax, which is precisely what occurred with Plaintiff's total loss.  Indeed, Plaintiff's lessor (the entity that leased the vehicle to Plaintiff) sent a letter of guarantee to Esurance agreeing to accept an amount for Plaintiff's total loss leased auto that did not include the sales tax.  This letter expressly stated that: "**Any refund by your company for *sales tax* and title fees should be sent directly to the customer.**"  Exhibit 6 (emphasis added).  Defendants' sleight of hand misleads lessees such as Plaintiff and their lessors into believing that the other is receiving the sales tax payment, when, in fact, EPC or EIC, through its claims administrator National General, pockets this money that they are not entitled to possess and are contractually required to pay under Plaintiff's and the Classes' policies.

3

6.      By not paying the full applicable sales tax, Defendants are systematically breaching Plaintiff's and other members of the Classes' policies.  Defendants' conduct deprives Plaintiff and other members of the Classes, all of whom have EPC or EIC personal auto policies with this express sales tax payment provision and/or whose claims are administered by National General, of their full benefits under their policies with EPC and EIC.

7.      As a result, Plaintiff brings this class action on behalf of himself and all others similarly-situated to: (1) recoup the money owed for the full applicable sales tax for totaled autos pursuant to the express terms of their standardized form personal auto policies; (2) remedy the harm Defendants caused by breaching this express sales tax contract term and their subsequent efforts to deceive Plaintiff and members of the Classes into believing that the full applicable sales tax for their totaled autos was not owed to them or would be paid pursuant to this express contract term, when, in fact, it is not being paid; and (3) secure a declaration of rights as to whether this express policy provision requires payment of the full applicable sales tax for totaled autos.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiff is a member of the Classes defined herein, each of which consist of at least 100 members, and he and the Defendants are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the § 1332 exceptions apply to this claim.

9.      This Court also has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties as to their respective rights and obligations under the standardized personal auto insurance policies with respect to payment of sales tax for total loss autos arising from the events detailed herein.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the

District and the Plaintiff and other members of the Classes reside in this District. As such, the Defendants are subject to personal jurisdiction in this District.

## THE PARTIES

11.     Plaintiff Allan Katz, at all times material hereto, is and has been a citizen of the State of New York, residing in Richmond County, Staten Island, New York.  Plaintiff paid applicable sales tax when he originally leased his auto.  The auto, which was insured by an EPC private passenger personal auto insurance policy, was in an automobile accident for which Plaintiff made a loss claim on his EPC policy.  EPC, through its claims administrator, National General, deemed his auto to be a total loss, and made a payment on Plaintiff's claim that did not include any sales tax for the total loss auto.

12.     Defendant EPC is a foreign corporation insurance company licensed to conduct and is conducting business in at least 22 other states, including New York.  EPC's principal place of business and headquarters is located at 3100 Sanders Road, Suite 201, Northbrook, Illinois 60062. EPC is a subsidiary of Esurance Insurance Company ("EIC"). In 2011, The Allstate Corporation acquired White Mountains, Inc., the then-parent company of the Esurance group of companies, including EPC and EIC.  As such, EPC and EIC are subsidiaries of The Allstate Corporation.  EPC writes private passenger personal auto insurance, offering coverage to insureds in at least 22 states, including the State of New York.

13.     Defendant National General is a foreign corporation insurance company licensed to conduct and is conducting business in New York.  National General's headquarters is located at 221 Bolivar Street, Jefferson City, Missouri 65101, and its principal place of business is located at 5630 University Parkway, Winston-Salem, North Carolina 27105.  In 2021, The Allstate Corporation acquired National General Holdings Corp. and National General Holdings Corp.'s subsidiaries, including National General.  As such, National General is a subsidiary of The Allstate Corporation.  National General writes private passenger personal auto insurance, offering coverage

to insureds in as many as 47 states, including in the State of New York.

14.     National General acts as EPC's and EIC's claims administrator to process and administer insurance claims submitted by EPC and EIC insureds under EPC's and EIC's personal auto insurance policies, including total loss claims covered by the policies' auto physical damage provisions (*i.e.,* comprehensive or collision coverages).[3]

<b>Conspiracy, Aiding and Abetting, and Concerted Action</b>

15.     In committing the wrongful acts alleged herein, Defendants have pursued, or joined in the pursuit of a common course of conduct, and have acted in concert via agreement with, and conspired with, one another in furtherance of the improper acts, plans, schemes, and transactions that are the subject of this Complaint.

16.     In addition, each of the Defendants rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant acted with knowledge of the primary wrongdoing, and was aware of his, her or its overall contribution to and furtherance of the wrongdoing.

<b><u>FACTUAL ALLEGATIONS</u></b>

**I.    The Standardized Auto Insurance Policy Expressly States The Company Will Pay "the Applicable Sales Tax" or the "Sales Tax that Applies" As Part of the Payment for a Total Loss Claim**

17.     EPC uses standardized personal auto insurance policies to issue auto insurance to insureds in at least 22 states,[4] including the policy it issued to Plaintiff in New York, which is

---

[3]

https://www.reddit.com/r/Insurance/comments/xm0ctf/esurance_redirected_my_claim_to_national_general/.

[4] These states are: Alabama, Arizona, California, Colorado, Georgia, Iowa, Idaho, Illinois, Kansas, Kentucky, Maryland, Missouri, Michigan, Nebraska, New Mexico, Nevada, New York, Oklahoma, Pennsylvania, Rhode Island, South Dakota, and West Virginia.

attached hereto as Exhibit 1.

18.    Each standardized personal auto insurance policy EPC issues contains a "Coverage for Physical Damage To An Auto" section that outlines EPC's responsibilities regarding payment of loss claims submitted for auto physical damage lines of coverage - *i.e.,* comprehensive coverage and collision coverage.  This section applies to payment of total loss claims.

19.    In the "Coverage for Physical Damage To An Auto" section, EPC clearly and explicitly states: "If *"we"* pay for *"loss"* in money, *"our"* payment will include the applicable sales tax for the damaged or stolen property."  EPC uses this exact provision in all personal auto policies it issues in at least 18 states, including in New York.[5]  Indeed, Plaintiff's EPC policy issued in New York contains this provision. *See* Ex. 1, p. 19 of 26.

20.    EPC further includes a materially similar sales tax payment provision in the "Coverage for Physical Damage To An Auto" section in all personal auto policies it issues in four other states.  Specifically, in the form policies EPC issues in Kansas, the sales tax provision reads: "If *"we"* pay for *"loss"* in money, *"our"* payment will include the applicable: 1. Sales tax for the damaged or stolen property ….".[6]  In the form policies EPC issues in Kentucky, EPC states: "If *"we"* pay for *"loss"* in money, *"our"* payment will include the applicable sales tax for that property."[7]  In the form policies EPC issues in Colorado, the sales tax provision provides: "If *"we"*

---

[5] These states are: Alabama, California, Georgia, Iowa, Idaho, Illinois, Maryland, Missouri, Michigan, Nebraska, New Mexico, Nevada, New York, Oklahoma, Pennsylvania, Rhode Island, South Dakota, and West Virginia.

[6] *See* page 29 of 37 of the PDF attachment to EPC Form Filing, SERFF # ALSE-132946290, entitled "1001 KS 02_21 Personal Auto Policy CLEAN.pdf", dated Aug. 13, 2021.  This document can be publicly accessed by going to https://filingaccess.serff.com/sfa/home/ks, inputting the SERFF number "ALSE-132946290" in the "SERFF Tracking Number" search box, clicking the search button, and then clicking on the form filing that appears.  After clicking on the form filing, the SERFF database will provide a list of all document attachments to this filing, including the cited document.

[7] *See* page 24 of 32 of the PDF attachment to EPC Form Filing, SERFF # ALSE-133365713, entitled "1001 KY 05_22 Personal Auto Policy CLEAN.pdf", dated Aug. 13, 2022.  This document

pay for *"loss"* in money, *"our"* payment will include the sales tax that applies for the damaged or stolen property."[8] In the form policies EPC issues in Arizona, the sales tax provision states: "If *"we"* pay for damages in money, *"our"* payment will include the applicable sales tax for the damaged or stolen property."[9] [10]

21.    Thus, in all the standardized personal auto policies it issues to insureds in at least 22 states, EPC expressly states that it will pay the "applicable sales tax" or the "sales tax that applies" for the totaled auto for ___*all*___ total loss claims it pays out.

22.    The "Coverage for Physical Damage To An Auto" section of EPC's form policies further contains a "Limits of Liability" provision that expressly provides, in pertinent part:

*"Our"* limit of liability for *"loss"* will be the lesser of the:

---

can be publicly accessed by going to https://filingaccess.serff.com/sfa/home/KY, inputting the SERFF number "ALSE-133365713" in the "SERFF Tracking Number" search box, clicking the search button, and then clicking on the form filing that appears.  After clicking on the form filing, the SERFF database will provide a list of all document attachments to this filing, including the cited document.

[8] *See* page 23 of 30 of the PDF attachment to EPC Form Filing, SERFF # ESUR-126948164, entitled "1001 CO 01_11Personal Auto Policy.pdf", dated Dec. 28, 2010.  This document can be publicly accessed by going to https://filingaccess.serff.com/sfa/home/CO, inputting the SERFF number "ESUR-126948164" in the "SERFF Tracking Number" search box, clicking the search button, and then clicking on the form filing that appears.  After clicking on the form filing, the SERFF database will provide a list of all document attachments to this filing, including the cited document.

[9] *See* page 23 of 32 of the PDF attachment to EPC Form Filing, SERFF # ALSE-133367057" entitled "1001 AZ 05_22 Personal Auto Policy 9.1.22.pdf", dated Sept. 7, 2022.  This document can be publicly accessed by going to https://filingaccess.serff.com/sfa/home/AZ, inputting the SERFF number "ALSE-133367057" in the "SERFF Tracking Number" search box, clicking the search button, and then clicking on the form filing that appears.  After clicking on the form filing, the SERFF database will provide a list of all document attachments to this filing, including the cited document.

[10] The bolded, italicized terms in these policy provisions - "we", "our", and "loss" – are defined terms in EPC's standardized form policies.  EPC's standardized policies defines them in materially the same ways as set forth below:
   a.  "'*We'*, '*us'*, and '*our'* refer to the Company providing this insurance, as shown on the Declarations page."  *See e.g.,* Ex. 1, p. 1 of 26.
   b.  "'*Loss'* means: **A.** Sudden, direct and unintended physical damage; or **B.** Theft." *See e.g.,* Ex. 1, p. 2 of 26.

   **A.** Actual cash value of the stolen or damaged property;

   **B.** Amount necessary to repair the property to its pre-loss physical condition; or

   **C.** Amount necessary to replace the property with other property of like kind and quality.

*See e.g.,* Ex. 1, p. 18 of 26. Each of EPC's standardized policies it issues in the 22 states contain materially the same provision as stated above.

23.    Given that Esurance group of companies defines a total loss as an auto that has sustained damage "so severe that it cannot be safely repaired or if it's not cost effective to repair"[11], EPC does not use the second option stated in its limits of liability section to pay total loss claims.

24.    Thus, the "Coverage for Physical Damage To An Auto" section of EPC's standardized auto policies expressly require EPC to pay the lesser of either the ACV of the totaled auto or the amount necessary to replace the totaled auto ***and specifically to include*** the "applicable sales tax" or the "sales tax that applies" for the totaled auto when paying ***all*** total loss claims.

25.    EIC, EPC's subsidiary, similarly uses standardized personal auto policies to issue auto insurance to insureds. EIC's standard form policies that it issues to insureds in many states, including in New York, contain identical or materially the same "Coverage for Physical Damage To An Auto" section with the identical or materially the same "Limits of Liability" provision and payment of "applicable sales tax" for total loss claims provision as the EPC standard form policies. Thus, in the states where EIC issues policies with this identical or materially similar language, EIC's standard form polices similarly require EIC to pay the "applicable sales tax" for the totaled auto as part of its payment for ***all*** total loss claims it pays out.

## II.   EPC Fails to Pay the Applicable Sales Tax As Promised in its Policies for Autos Declared Total Losses

26.    Despite EPC's standardized policy expressly stating that EPC will pay the "applicable sales tax" or "sales tax that applies" as part of total loss claim payments, EPC routinely

---

[11] https://pm.esurance.com/XPMWeb/HelpInfo.aspx?DefNo=Claim+Detail+Total+Loss.

fails to do so on vehicles deemed by Defendants to be a total loss.

27.    In fact, EPC routinely pays no sales tax ***at all*** for leased autos declared a total loss. Plaintiff's experiences highlight this fact and shed light on how EPC and its claims administrator, National General, work in concert to systematically short insureds' total loss payments, allowing EPC to pocket the money it owes for sales tax on totaled leased autos.

**A. Plaintiff's Experiences**

28.    Plaintiff insured a leased 2019 Nissan Maxima on his personal auto insurance policy issued by EPC in the State of New York.

29.    On June 24, 2022, Plaintiff got into an accident while operating the 2019 Nissan Maxima.  Plaintiff's policy Declarations page in effect at the time of the accident, attached as Exhibit 2, shows Plaintiff had collision coverage on this auto at the time of the accident.  As such, Plaintiff filed a loss claim with EPC for the auto under the collision coverage provisions of his EPC policy.  EPC had National General administer Plaintiff's loss claim.

30.    As with all of EPC's standardized personal auto policies issued to insureds in New York, Plaintiff's collision coverage policy provisions for payment of loss claims are set forth in the policy's "Coverage for Physical Damage To An Auto" section.  Plaintiff's policy, therefore, includes the limits of liability and "applicable sales tax" provisions outlined above.  Indeed, Plaintiff's policy expressly provides that if a loss claim is approved, payment for the claim would be the limits of liability ***and would also specifically include*** the "applicable sales tax" for the damaged auto. *See* Ex. 1, pp. 18-19 of 26.

31.    After filing the claim, EPC itself or through its claims administrator, National General, approved Plaintiff's claim and declared the 2019 Nissan Maxima a total loss.

32.    National General, acting on behalf of EPC, sent Plaintiff a letter dated July 20, 2022 (attached hereto as Exhibit 3) stating the amount EPC would settle and pay for Plaintiff's total loss leased auto, as follows:

| | |
|---|---|
| $28,155.00 | Actual Cash Value |
| $2,498.76 | Sales Tax @ <<ENTER SALES TAX PERCENT HERE>>% |
| $0 | Transfer Fees |
| $500 | Less Deductible |
| $30,153.76 | NET PAYMENT |

Notably, this written settlement statement represents that EPC will pay the correct amount (including sales tax) owed for Plaintiff's totaled 2019 Nissan Maxima consistent with the standardized "Coverage for Physical Damage To An Auto" section provisions of Plaintiff's EPC policy. Specifically, Plaintiff's policy, like those of the members of the Classes, states EPC will pay the ACV of the totaled auto (the first option under the limits of liability provision) ***plus*** the applicable sales tax owed for the totaled 2019 Nissan Maxima, minus the deductible for the collision coverage as shown on Plaintiff's policy Declaration Page.

33.     Defendants also sent Plaintiff a "market valuation report" for the totaled 2019 Nissan Maxima generated by a third-party vendor, CCC One, with the written settlement statement. The market valuation report is attached hereto as Exhibit 4. The market valuation report corroborates the amount EPC states in the written settlement statement that it will pay for Plaintiff's totaled auto. Indeed, the market valuation report shows that the "base vehicle value" for the auto as $28,155.00, the amount Defendants stated was the ACV of the auto on the written settlement. The market valuation report, as depicted below, also shows that an 8.875% "Vehicular Tax" of $2,498.76 as being factored into the total value of the auto, which is also the same amount Defendants' written settlement statement identified as the sales tax owed on Plaintiff's totaled auto:

| VALUATION SUMMARY | |
|---|---|
| Base Vehicle Value | $ 28,155.00 |
| Adjusted Vehicle Value | $ 28,155.00 |
| Vehicular Tax (8.875%) | + $ 2,498.76 |
| Tax reflects applicable state, county and municipal taxes. | |
| **Total** | **$ 30,653.76** |

34.     Thus, Plaintiff received two documents from Defendants representing that the applicable sales tax for his totaled 2019 Nissan Maxima should and would be paid as part of his

11

total loss claim settlement, which is what is explicitly promised in his EPC policy.

35.     After receiving these documents, Plaintiff completed and returned the required paperwork so that his total loss claim payment could be issued.

36.     EPC and National General subsequently issued a settlement payment for Plaintiff's total loss claim to Plaintiff's 2019 Nissan Maxima lessor, Nissan-Infiniti Services Co.  Plaintiff was led to believe that Defendants paid his lessor the full $30,153.76 as promised in the written settlement statement, which included payment for sales tax for the totaled 2019 Nissan Maxima, because he never received payment of the sales tax from Defendants for the totaled leased auto.

37.     On January 17, 2024, Plaintiff emailed the claims representative concerning his total loss claim listed on his online Esurance account to request a copy of the settlement statement since he misplaced it.  This claims representative appears to be a National General employee because the domain for the claims representative's listed email address is "ngic.com". "Ngic.com" is the website domain name for Defendant National General.

38.     That same day, the claims representative responded to Plaintiff's inquiry admitting that EPC did not actually pay the applicable sales tax owed for the 2019 Nissan Maxima as shown on the settlement statement. The email reads, in pertinent part:

> There was a difference in the amount of the initial evaluation and the amount paid since the vehicle was found to be a leased vehicle.  Because it was a lease, sales tax was not owed. So the amount paid was $27,655, which is the value of the vehicle less your $500 deductible.  This amount is noted in the attached letter of guarantee from Nissan.

(Exhibit 5).  Moreover, the claims representative attached copies of the settlement statement (Exhibit 3), market valuation report (Exhibit 4), and the letter of guarantee referenced in his email from Nissan Motor Acceptance Company LLC[12] ("NMAC") to EPC, dated August 8, 2022 (Exhibit 6) to his email.

---

[12] Nissan Motor Acceptance Company LLC is the servicer for the lessor Nissan-Infiniti Services Co.

39.    The letter of guarantee (Exhibit 6) states, in pertinent part:

Upon receipt of payment in the amount of at least $27,655.00, Nissan Motor Acceptance Company LLC (NMAC) agrees to release our interest on the above referenced vehicle by forwarding the paper title to your company.  If the final insurance check is issued for a greater amount, NMAC will accept it with the understanding that you have adjusted the claim amount.

***Any refunds by your company for sales tax and title fees should be sent directly to the customer***.  Therefore, we will assume the amount you remit to Nissan-Infinity Services Co. is net of these fees paid by the customer.

(emphasis added).

40.    Plaintiff does not recall receiving a copy of the letter of guarantee until the claims representative emailed him a copy of it on January 17, 2024.  Further, there is no indication on the letter of guarantee itself that this document was ever sent to him prior to January 17, 2024.  He is not listed as an addressee, nor is he listed as being an additional recipient of a carbon copy.  Nor was Plaintiff otherwise informed prior to January 17, 2024, that no sales tax was paid on his total loss claim.

41.    Consequently, Plaintiff learned for the first time on January 17, 2024 - a year and a half after his total loss occurred - that EPC paid no sales tax at all for his total loss claim despite Defendants representing to him that EPC will pay the applicable sales tax owed as part of the total loss claim payment.

42.    Instead of paying the applicable sales tax for the totaled 2019 Nissan Maxima as stated on the settlement statement and pursuant to Plaintiff's EPC policy, Defendants deceived Plaintiff into believing that EPC paid the sales tax for the totaled auto to his lessor.  While, at the same time, Defendants misled Plaintiff's lessor into believing EPC was paying the sales tax owed directly to Plaintiff because it did not include payment for sales tax in EPC's payment to NMAC. Defendants also did not correct or clarify to NMAC that it did not, in fact, pay Plaintiff the amount of sales tax owed for the totaled auto when NMAC stated that such payments should be sent directly to Plaintiff in its letter of guarantee.  But-for Plaintiff requesting an additional copy of the settlement

statement and Defendants' claim representative's gratuitous admission to Plaintiff that no sales tax was ever paid for his total loss claim, Plaintiff would likely have never learned of EPC's breach of his policy contract and related misconduct.

43.    To date, Plaintiff has never received payment from Defendants for the sales tax owed for his totaled 2019 Nissan Maxima even though his EPC policy expressly states that EPC will pay the applicable sales tax on the damaged or stolen property, and Plaintiff's lessor made it clear to Defendants that the sales tax was to be paid to Plaintiff.  Thus, EPC breached its policy with Plaintiff by failing to pay the applicable sales tax owed for the totaled 2019 Nissan Maxima as part of his loss claim payment.

44.    Moreover, Defendants entered into a voluntary agreement amongst each other with a common scheme or plan to not pay the full applicable sales tax owed for Plaintiff's totaled auto, in violation of the EPC policy, by: (1) sending him a settlement statement purporting that EPC will pay the applicable sales tax owed on the totaled auto, deceptively portraying that EPC would pay the full applicable sales tax as part of his total loss claim settlement; (2) sending him a market valuation report corroborating Defendants' representation that the applicable sales tax for the totaled auto will be paid; (3) sending Plaintiff's lessor a payment that did not include the applicable sales tax, leaving the lessor with the false impression that Plaintiff would be paid the full applicable sales tax directly; and (4) failing to pay Plaintiff the applicable sales tax owed on the totaled auto, leaving Plaintiff to conclude that the sales tax was paid to his lessor.

45.    This common scheme, used to breach EPC's standardized form policy provisions and misrepresent and conceal the breach from Plaintiff, allowed EPC to pocket the full applicable sales tax amount owed on Plaintiff's total loss claim.

**B.  Defendants' Use This Same Common Scheme To Breach The Express "Applicable Sales Tax" Provisions When Paying Total Loss Claims for Other Members of the Classes**

46.    As noted above, each member of the Classes was insured under Defendants' standardized auto policies that were materially identical to Plaintiff's and members of the Classes

policies with respect to the obligation to pay sales tax in connection with a total loss payments.

47.    Like Plaintiff, members of the Classes who have totaled leased autos have similarly not been paid the "applicable sales tax" or "sales tax that applies" for their total loss claims submitted under their EPC or EIC policies in breach of the express provisions of their policy. Discovery will bear out whether Defendants do not pay the full "applicable sales tax" or the "sales tax that applies" to members of the Classes who experienced total losses of their owned outright or financed autos.   However, as the Plaintiff's claims representative's January 17, 2024 email indicates, Defendants systematically fail to pay any of the applicable sales tax or sales tax that applies on totaled leased autos as part of members of the Classes' total loss claim settlement payments.

48.    Upon information and belief, National General acts as EPC's and EIC's claims administrator to process and administer loss claims that insureds who carry comprehensive or collision coverages on their insured autos submit to EPC and EIC for their damaged or stolen autos.[13]

49.    Just like the Plaintiff, the members of the Classes' EPC or EIC standardized personal auto policies expressly provide that, if a loss claim is approved, payment for the claim would be the limits of liability ***and specifically include*** the "applicable sales tax" for the damaged auto.

50.    In furtherance of their common plan and scheme, Defendants agreed and worked in concert to create, approve, and utilize materially uniform claims handling, settlement, and payment processes for first-party total vehicle loss claims of insureds under Classes' EPC or EIC standardized personal auto policies.

51.    First, National General on behalf of EPC and EIC determines whether the members of the Classes' loss claims are covered under the policy's comprehensive or collision coverage

---

[13]
https://www.reddit.com/r/Insurance/comments/xm0ctf/esurance_redirected_my_claim_to_national_general/.

provisions.  If the claim is covered, National General on behalf of EPC and EIC will approve the claim.  Just as with Plaintiff's claim, National General on behalf of EPC and EIC then determines if the auto is a total loss.  If the auto is a total loss, National General on behalf of EPC and EIC send the insured a written settlement statement purporting that EPC or EIC will pay the full "applicable sales tax" or "sales tax that applies" for the totaled auto as part of its total loss claim settlement payment or otherwise misrepresenting representing the amounts owed for the total loss claim.

52.    National General, on behalf of EPC and EIC, also employs a uniform practice of using a third-party vendor to generate a market valuation report for the totaled autos. National General, on behalf of EPC and EIC, sends this market valuation report to the insured with the settlement statement as further support that the insurer will pay the correct amounts to be paid pursuant to the insurance policy, as purported by the settlement statement.  Then, despite purporting to pay the full "applicable sales tax" or full "sales tax that applies" in these documents and giving members of the Classes a false impression that EPC or EIC will pay the full amount for the total loss claim under their form auto policies, National General, on behalf of EPC and EI,C do not actually pay the full applicable sales tax owed as part of the claim settlement.

53.    Defendants' systematic failure to pay the full "applicable sales tax" or the full "sales tax that applies" on a totaled auto to Plaintiff and members of the Classes as part of their approved total loss claims constitutes a willful and systemic breach of the express provisions of EPC's and EIC's standardized form auto insurance contracts.

54.    This material breach, combined with Defendants' deceptive and misleading conduct in taking active steps to conceal from members of the Classes that Defendants have caused a breach of their insurance policies by misrepresenting that EPC and EIC will be paying the full "applicable sales tax" or full "sales tax that applies" owed, permitted EPC and EIC to pocket thousands of dollars it did not have a right to keep.

III.    **Defendants' Conduct Causing Systematic Breach of the Express Sales Tax Payment Provisions of EPC's and EIC's Personal Auto Policies Is Ongoing**

55.    As outlined above, Defendants use and continue to use a uniform plan and practice that causes members of the Classes' EPC and EIC policies to be routinely breached. As a result of this systemic breach, members of the Classes do not receive the full monetary benefits of their auto policies.

56.    Plaintiff currently insures two other leased autos on his EPC personal auto policy. His current policy Declarations page, attached hereto as Exhibit 7, lists his leased 2022 Ford Explorer 4D 4x4 and 2021 Mercedes-Benz C Class 300 as insured under the policy and shows Plaintiff carries comprehensive and collision coverages on both autos.  Plaintiff is concerned that, if one of his autos is declared a total loss under his EPC policy, Defendants will again engage in their common scheme, resulting the underpayment of total loss claims by not including the full "applicable sales tax" as explicitly provided for in this EPC policy.

57.    To prevent future systemic breaches of EPC's standardized personal auto insurance policy, a declaration of rights under the policy is necessary as there is an actual case or controversy concerning the parties' rights and obligations under the contract.

**CLASS ACTION ALLEGATIONS**

58.    Plaintiff brings this action seeking certification of a Declaratory Judgment Class, Total Loss Class and National General Claims Administrator Class, defined below, pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3) and/or (c)(4), as may be deemed appropriate by the Court.

59.    Plaintiff brings this action, individually and on behalf of all other persons similarly situated, more specifically defined as follows:

> **Declaratory Judgment Class:**  All persons who currently have a personal automobile insurance policy with comprehensive or collision coverage issued by ESURANCE PROPERTY AND CASUALTY INSURANCE COMPANY ("EPC") that contain the same or materially the same policy provision stating that EPC will pay the "applicable sales tax" or "sales tax that applies" for the damaged or stolen automobile declared a total loss.

**Total Loss Class:** All persons insured by a personal automobile insurance policy with comprehensive or collision coverage issued by ESURANCE PROPERTY AND CASUALTY INSURANCE COMPANY ("EPC") that contain the same or materially the same policy provisions stating that EPC will pay the "applicable sales tax" or "sales tax that applies" for the damaged or stolen auto declared a total loss, who, within the applicable statute of limitations, made a first-party claim to EPC for a total loss of their covered auto under the policy's comprehensive or collision provisions, whose auto was declared a total loss, and the monetary payment for the total loss claim did not include the full applicable sales tax.

**National General Claims Administrator Class:** All persons insured by an EPC or EIC personal automobile policy that contain the same or materially the same policy provisions stating that EPC or EIC will pay the "applicable sales tax" or "sales tax that applies" for the damaged or stolen auto declared a total loss, who, within the applicable statute of limitations, made a first-party claim to EPC or EIC for total loss of their covered auto under the policy's comprehensive or collision provisions, whose first-party loss claim was administered by NATIONAL GENERAL INSURANCE COMPANY, whose auto was declared a total loss, and the monetary payment for the total loss claim did not include the full applicable sales tax.

60.    Plaintiff reserves the right to modify or amend the Class definitions upon completion of discovery.

61.    Moreover, the Court can define the Classes and create additional subclasses as may be necessary or desirable to adjudicate common issues and claims of the Class members if the need arises based on discovery of additional facts.

62.    Excluded from the Classes are: (i) Defendants, their officers, employees, agents and affiliates, their subsidiaries, legal representatives, heirs, successors and assigns, (ii.) any of Plaintiff's counsel, their officers, employees, agents, legal representatives, heirs, successors, and assigns, and (iii.) the judges assigned to this action and any of their immediate family members.

63.    The members of the Classes are so numerous and are geographically dispersed throughout at least 22 states in the United States. Therefore, that joinder of all members is impracticable.

64.    The precise numbers of the members of the Classes are unknown to Plaintiff at this time. However, Plaintiff believes that, because EPC writes millions of dollars of private-passenger

physical damage coverage premiums each year in at least 22 states, and National General administers total loss claims on behalf of EPC and EIC in many of those states, the persons affected by Defendants' unlawful and deceptive practices consists of thousands of individuals.  Members of the Classes can be easily identified from Defendants' records.

65.    Plaintiff's claims are typical of those of the other members of the Classes because (a) he insured an auto under an personal auto insurance policy issued by EPC, which included comprehensive and collision coverages, (b) his EPC policy expressly stated EPC would pay the "applicable sales tax" for a loss to a damaged or stolen auto covered by comprehensive or collision loss coverages if EPC made a payment for the loss in money, (c) he made a loss claim for his auto under his insurance policy's comprehensive or collision coverage provisions, (d) National General administered his total loss claim, (e) his auto was declared a total loss as a result of making the loss claim, (f) his total loss claim was paid in money, (g) payment of his claim did not include the applicable sales tax for the totaled auto, (h) he continues to be insured by a personal auto policy issued by EPC, which expressly states EPC will pay the "applicable sales tax" for a loss to a damaged or stolen auto covered by comprehensive or collision loss coverages, and (i) he carries comprehensive or collision coverages on one or more autos currently insured by the policy.

66.    Further, the material and relevant policy terms for each member of the Classes are identical to or materially the same as the terms of Plaintiff's policies, as are the written settlement statements and market valuation reports or summaries sent by Defendants to Plaintiff and members of the Classes.  As detailed above, Plaintiff's and members of the Classes' legal claims arise from the same core circumstances, practices and conduct, namely, a personal auto insurance policy issued or administered by Defendants that expressly states the insurance company will pay the "applicable sales tax" or "sales tax that applies" for the stolen or damaged auto as part of a loss claim submitted and approved pursuant to the policy's collision or comprehensive coverage provisions and the insurance company's subsequent failure to pay the full applicable sales tax for

autos declared a total loss in accord with the policy provisions. Plaintiff suffered the same common core harm as all the other members of the Classes he seeks to represent. Accordingly, certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

67.    Plaintiff's interests are coincident with and not antagonistic to those of other members of the Classes, nor is the Plaintiff subject to any unique defenses.

68.    Plaintiff and his counsel will fairly and adequately protect and represent the interests of each member of the Classes. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting class actions and particularly insurance class actions on behalf of insureds. Plaintiff's counsel has successfully litigated other class action cases similar to the instant action: where insurers breached contracts with insureds and engaged in deceptive insurance practices by failing to pay sales tax as part of total loss claim settlements as required by the insurance contract.

69.    Plaintiff's claims raise questions of law and fact common to all members of the Classes, within the meaning of Fed. R. Civ. P. 23(a)(2), and they predominate over any questions affecting only individual members of the Classes within the meaning of Rule 23(b)(3). The central issues in this litigation turn on interpretation of identical or materially similar policy provisions contained in standard form policy contracts and Defendants systemic practice of failing to make sales tax payments expressly required by the standard form policy contracts. Thus, this case is well-suited for class-wide adjudication. Said predominant common questions include, but are not limited to, the following:

   (a) Whether Plaintiff and the members of the Classes carry comprehensive or collision coverages on their autos insured by their personal auto insurance policies issued by EPC and EIC;

(b) Whether EPC's and EIC's standardized form policies expressly provide that the insurer's payment for loss will include the "applicable sales tax" or the "sales tax that applies" for a damaged or stolen auto if the loss claim is paid in money;

(c) Whether declaratory judgment against EPC is appropriate;

(d) Whether National General administered EPC's and EIC's total loss claims for Plaintiff and members of the Classes;

(e) Whether Plaintiff and the members of the Classes submitted comprehensive or collision total loss claims under their personal auto insurance policies;

(f) Whether Defendants approved Plaintiff's and members of the Classes' comprehensive or collision total loss claims;

(g) Whether Defendants declared Plaintiff's and members of the Classes' autos total losses;

(h) Whether Defendants sent to Plaintiff and members of the Classes settlement statements and/or market valuation reports purporting to pay Plaintiffs and members of the Classes a monetary settlement for their total loss claims;

(i) Whether the settlement statements and/or market valuation reports Defendants sent to Plaintiff and members of the Classes represented that the full "applicable sales tax" or the full "sales tax that applies" or any sales tax would be included in the monetary settlement for their total loss claims;

(j) Whether Defendants' representation in the settlement statements it sent to Plaintiff and members of the Classes claiming that the payment for the total loss claim will include the full applicable sales tax or full sales tax that applies or any sales tax for the totaled auto when, in reality, the payment for the total loss claim did not include the full applicable sales tax or full sales tax that applies for the total auto was deceptive;

(k) Whether National General administered EPC's and EIC's total loss claims pursuant to a common plan and practice devised by EPC, EIC or National General to not pay the

full applicable sales tax on total loss claims;

(l)   Whether payment of Plaintiff's and members of the Classes' total loss claims included payment of the full applicable sales tax for the damaged or stolen property;

(m)  Whether EPC breached its standardized personal auto insurance contracts with the Plaintiff and the members of the Classes;

(n)   Whether National General's administration of Plaintiff's and the members of the Classes' total loss claims caused EPC and EIC to breach personal auto insurance contracts with the Plaintiff and the members of the Classes;

(o)   Whether Defendants' deceptive and improper practices injured Plaintiffs and members of the Classes;

(p)   Whether Plaintiff and the Classes are entitled to compensatory damages, and if so, the calculation of damages;

(q)   Whether Plaintiffs and members of the Classes are entitled to an injunction restraining Defendants' future deceptive acts and practices.

70.    Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the members of the Classes in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications.  Furthermore, because the damages suffered by individual members of the Classes is relatively small, their interests in maintaining separate actions are questionable and the expense and burden of individual litigation makes it impracticable for members of the Classes to seek individual redress for the wrongs done to them.  Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.  Indeed, the Classes are readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

71.    The issues related to Plaintiff's claims do not vary from the issues relating to the claims of the other members of the Classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

72.    Defendants' unlawful and deceptive practices in failing to pay the full "applicable sales tax" or "sales tax that applies" for the totaled auto when they approve comprehensive or collision loss claims for autos they declare total losses, despite the standardized personal auto policies explicitly stating that total loss claims will include payment of such taxes, are ongoing. Injunctive relief and declaratory relief are necessary to stop these repeated and continued violations, which are likely to continue, repeat, and cause damages to the Classes in the future.

73.    In the alternative, the Classes may be certified pursuant to Fed.R.Civ.P. 23(b)(1) because adjudications with respect to individual class members would as a practical matter be dispositive of the other members of the Classes given that their claims all emanate from a common provision in their standard form insurance policies and the risk of inconsistent or varying adjudications with respect to individual class members would establish incompatible standards of conduct for Defendants with respect to whether failure to pay the full applicable sales tax for total loss autos is required by and breaches common provisions of standard form policies.

74.    In the alternative, the Classes may be certified pursuant to Fed.R.Civ.P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate preliminary and final injunctive and/or equitable relief with respect to the Classes.

75.    In the alternative, the action may be maintained as a class action with respect to particular issues, pursuant to Fed.R.Civ.P. 23(c)(4).

All conditions precedent to suit have occurred or been performed.

## CAUSES OF ACTION

## COUNT I: DECLARATORY JUDGMENT

76.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

77.    Plaintiff brings this count individually and on behalf of the Declaratory Judgment Class members against Defendant Esurance Property and Casualty Insurance Company.

78.    Section 2201 of the Declaratory Judgment Act ("DJA") provides that, "[i]n a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

79.    Section 2202 of the DJA states that, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

80.    All members of the Declaratory Judgment Class, including Plaintiff, currently hold an automobile insurance policy issued by EPC and pay for collision or comprehensive coverages on one or more automobiles listed on the automobile insurance policy.

81.    A dispute between EPC and Plaintiff and the other members of the Declaratory Judgment Class is before this Court concerning the parties' rights and obligations under the standardized form personal auto policies EPC issued to Plaintiff and the Declaratory Judgment Class members.  Each of these form policies contain either the following identical or materially the same provision concerning monetary payment of a comprehensive or collision loss claim: "If *'we'* pay for *'loss'* in money, *'our'* payment will include the applicable sales tax for the damaged or stolen property."  The materially similar provisions include slight variations to the above phrasing, but every one of these provisions expressly states that EPC's payment for the loss will include the

"applicable sales tax" or the "sales tax that applies" to property subject to the claim, *i.e.,* the auto.

82.    The parties dispute whether these standardized personal auto policies require EPC to pay the full applicable sales tax owed for the loss of a damaged or stolen auto, whether owned, financed or leased, when Plaintiff and members of the Declaratory Judgment class submits a collision or comprehensive loss claim to EPC for the loss of their auto in accord with the policy, the claim is approved and the auto is declared a total loss, and EPC pays the claim in money.

83.    EPC's unlawful common policy and general business practices of failing to pay the full applicable sales tax owed as stated in the policy is ongoing.

84.    Plaintiff, therefore, seeks a declaration on behalf of himself and the Declaratory Judgment Class that the standard form personal auto insurance policies EPC issues containing the "applicable sales tax" or the materially similar "sales tax that applies" provision as described herein requires EPC to pay the full applicable sales tax owed for the damaged or stolen auto, whether owned, financed or leased, as part of the monetary settlement of a loss claim brought under the policy's comprehensive or collision coverages, when the claim is approved, the auto is declared a total loss, and EPC decides to pay the claim in money.  Plaintiff further seeks injunctive relief flowing from this declaration.

## COUNT II: BREACH OF CONTRACT

85.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

86.    Plaintiff brings this count individually and on behalf of the Total Loss Class members against Defendant Esurance Property and Casualty Insurance Company.

87.    Plaintiff was and continues to be a party to a standardized insurance contract with EPC as described herein.  All Total Loss Class members were parties to a standardized insurance contract with EPC containing materially identical terms.

88.     Plaintiff and the Total Loss Class members paid for collision or comprehensive coverages on the autos listed on their EPC personal auto policies.  Thus, the insurance contract's provisions under the contract's "Coverage for Physical Damage To An Auto" applied to Plaintiff and the Total Loss Class members.  In this section of the standardized policy, Plaintiff and the Total Loss Class members' EPC standardized personal auto policies expressly stated that payment for loss claims will include the "applicable sales tax" or "sales tax that applies" to the damaged or stolen property.

89.     Plaintiff and the Total Loss Class members made a comprehensive or collision loss claim under the "Coverage for Physical Damage To An Auto" provisions of the EPC standardized policy.  Either EPC or National General, acting as EPC's claim administrator, determined that Plaintiff's and the Total Loss Class members' loss claims to be covered claims.  Defendants approved Plaintiff's and the Total Loss Class members' claims and declared Plaintiff's and Class members' autos total losses.

90.     Pursuant to the terms set forth in the "Coverage for Physical Damage to an Auto" section of the policy contract, EPC elected to pay Plaintiff's and the Total Loss Class members' total loss claims in money.

91.     EPC, by paying their comprehensive or collision loss claims, determined that Plaintiff and each Total Loss Class member complied with the terms of their EPC personal auto policies, and fulfilled all duties and conditions under the policy contract to be paid on his or her total loss of the auto.

92.     Pursuant to the aforementioned materially the same contractual provisions, upon the approving Plaintiff's and the Total Loss Class members' claims, declaring their autos total losses and electing to pay their claims in money, EPC was required to include the "applicable sales tax" or the "sales tax that applies" for the totaled auto as part of payment for Plaintiff's and the Total

Loss Class members' all total loss claims.

93.     Further, by promising to pay Plaintiff and every Total Loss Class member the ACV of their totaled auto or the replacement cost of their auto in the EPC policies' materially identical limits of liability provision, EPC promised its payment for Plaintiff's and the Total Loss Class members' loss claims would include the full applicable sales tax under the terms of the insurance contract.

94.     EPC did not to pay full applicable sales tax to Plaintiff and the Total Loss Class members.  Indeed, EPC paid no sales tax whatsoever for Plaintiff's approved total loss claim of a totaled leased auto or for the approved loss claims of other members of the Total Loss Class who experienced total losses of leased autos.

95.     EPC's failure to provide the promised coverage constitutes a material breach of contract with Plaintiff and every Total Loss Class member.

96.     As a result of said breaches, Plaintiff and the Total Loss Class members were injured because they did not receive the full total loss benefits under the contract and their total loss claims were all underpaid because it did not include the full applicable sales tax for their total loss auto. As such, Plaintiff and the Total Loss Class members have incurred damages in an amount to be proven at trial.

## COUNT III: VIOLATION OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

97.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

98.     Plaintiff brings this count individually and on behalf of the Total Loss Class members against Defendant Esurance Property and Casualty Insurance Company.

99.     All contracts imply a covenant of good faith and fair dealing in the course of performance.

100.    Plaintiff was and continues to be a party to a standardized personal auto insurance policy with EPC as described herein.  All Total Loss Class members were also parties to standardized personal auto insurance policies with EPC.  Plaintiff's and the Total Loss Class members' standardized EPC personal auto policies contain materially identical or similar terms.

101.    As set forth above, the EPC's form personal auto policies explicitly state that payment for loss claims covered by comprehensive or collision coverages will include the "applicable sales tax" or the "sales tax that applies" for the damaged or stolen property.

102.    Plaintiff and the Total Loss Class members submitted comprehensive or collision loss claims for their insured autos pursuant to their EPC personal auto policies.

103.    Either Esurance or National General, acting as EPC's claim administrator, approved Plaintiff's and the Total Loss Class members' claims and declared Plaintiff's and the Total Loss Class members' autos total losses.

104.    In administering Plaintiff's and the Total Loss Class members' total loss claims, Defendants made payments to Plaintiff and members of the Total Loss and National General Claims Administrator Classes for their total loss claims under their EPC or EIC policies falsely portraying that the amounts paid as the amounts due to them under their EPC or EIC policies, when those amounts did not include the full applicable sales tax for the total loss auto as required by the EPC or EIC policies. Under the implied covenant, EPC was obligated to provide Plaintiff and the Total Loss Class members with correct payment of the applicable sales tax and to not falsely portray the payment as the amounts due to them under their EPC or EIC policies.

105.    Further, in administering Plaintiff's and the Total Loss Class members' total loss claims, Defendants engaged in a uniform and common practice, devised by EPC, to provide Plaintiff and the Total Loss Class members with settlement statements and market valuation reports purporting that EPC will pay the full, correct applicable sales tax for the totaled auto as part of the

claim settlement payout as required by the policy or otherwise inaccurately portraying the amounts owed for their total loss claim.

106.    Under the implied covenant, EPC was obligated to provide Plaintiff and the Total Loss Class members with correct information regarding settlement of their claims, including the amount of sales tax owed on the totaled autos and the amount of sales tax it will actually pay for the totaled auto.  EPC was also obligated to pay the claims in accord with the provisions of the contracts and to not do anything to unfairly interfere with Plaintiff's or the Total Loss Class members' rights to receive the benefits of the contract.

107.    Nevertheless, EPC, directly and through its agent National General, acted in bad faith by misrepresenting on the settlement statements issued to Plaintiff and the Total Loss Class members that payment of their claims will include the payment of the correct, applicable sales tax for the totaled autos or otherwise inaccurately portraying the amounts owed for their total loss claim.

108.    EPC furthered this deception by giving Plaintiff and other Total Loss Class members market valuation reports generated by a third-party vendor.  These market valuation reports corroborated Defendants' misrepresentations regarding the purported sales tax owed as set forth on the settlement statements it issued to Plaintiff and the Total Loss Class members.

109.    EPC, however, did not pay the full correct, applicable sales tax for the totaled autos.  Indeed, EPC paid no sales tax whatsoever for Plaintiff's totaled auto or other members of the Total Loss class whose totaled autos were leased.

110.    In effect, EPC engaged in active efforts to first deceive Plaintiff's and other Total Loss Class members' into believing it was honoring the provisions of the contract by purporting to pay the correct sales tax owed for the totaled automobile.  Then, EPC took affirmative steps to conceal from Plaintiff and other Total Loss Class members the fact that it did not pay the correct,

full sales tax for the total auto that it owed as part of Plaintiff's and other Total Loss Class members' claim settlement. For example, EPC failed to inform Plaintiff and other members of the Total Loss Class whose total loss auto was leased that the applicable sales tax was owed directly to them as opposed to their lessor, allowing Plaintiff and the Total Loss Class members to think EPC paid the sales tax to their auto lessor. EPC further allowed the lessor to think that EPC was paying the sales tax for the total loss leased vehicle to Plaintiff and those Total Loss Class members. Indeed, for example, Plaintiff's lessor sent EPC, through its claims administrator, a letter indicating it was accepting a lesser amount for the total loss leased auto that did not include sales tax and expressly stating that "***Any refund by your company for sales tax and title fees should be sent directly to the customer***." Exhibit 6 (emphasis added). In reality, EPC did not pay the full, correct applicable sales tax owed for the total auto to either the lessor or Plaintiff or the Total Loss Class members. These acts of bad faith deprived Plaintiff and other Total Loss Class members of the benefits of their insurance contract.

111.    EPC has not paid Plaintiff and other Total Loss Class members the full applicable sales tax owed on their totaled autos.

112.    In failing to perform under its contracts fairly or in good faith, EPC, besides breaching its policy contracts with Plaintiff and Total Loss Class members, also breached the implied covenant of good faith and fair dealing in those policy contracts.

113.    As a result of EPC's failures to deal fairly or in good faith, Plaintiff and the Total Loss Class members have incurred damages in an amount to be proven at trial.

## COUNT IV: DECEPTIVE ACTS AND PRACTICES, NEW YORK GBL, § 349

114.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

115.    Plaintiff brings this count individually and on behalf of the Total Loss Class

members who have EPC standardized personal auto policies issued to them in the State of New York, against Defendant Esurance Property and Casualty Insurance Company. Plaintiff also brings this count individually and on behalf of the National General Claims Administration Class, who have EPC standardized personal auto policies issued to them in the State of New York and whose total loss claims National General administered, against Defendant National General Insurance Company.

116.    Defendants' conduct alleged herein constitutes recurring, unlawful deceptive acts and practices in violation of New York's General Business Law ("GBL") § 349. As such, Plaintiff, the Total Loss Class members, and the National General Claims Administrator Class members seek monetary damages and entry of injunctive relief against Defendants, enjoining them from continuing to engage in the deceptive and unlawful conduct described herein.

117.    Section 349(a) of the GBL proscribes the use, act, or employment of deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any services in New York.

118.    Defendants' business practices are governed by Section 2601 of the New York Insurance Law, which lists the following practices that, by definition, are deceptive acts and practices:

(1) knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue;

(2) failing to acknowledge with reasonable promptness pertinent communications as to claims arising under its policies;

(3) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under its policies;

(4) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear, except where there is a reasonable basis supported by specific information available for review by the department that the claimant has caused the loss to occur by arson.

> After receiving a properly executed proof of loss, the insurer shall advise the claimant of acceptance or denial of the claim within thirty working days;
>
> (5) compelling policyholders to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them;
>
> (6) failing to promptly disclose coverage pursuant to subsection (d) or subparagraph (A) of paragraph two of subsection (f) of section three thousand four hundred twenty of this chapter;
>
> (7) submitting reasonably rendered claims to the independent dispute resolution process established under article six of the financial services law; or
>
> (8) artificially deflating or otherwise lowering cost data used for adjusted claims, or using cost data that is not appropriate for the region of the state where the loss occurred; this shall include but is not limited to claims adjusted by a person issued a temporary permit pursuant to subsection (n) of section two thousand one hundred eight of this chapter.

Accordingly, Defendants are clearly on notice that they may not communicate with insureds in a way that is misleading or false in any material respect.

119. Defendants engaged in deceptive acts and practices in violation of GBL § 349 by: (1) knowingly misrepresenting and misleading Plaintiff and members of the Total Loss and National General Claims Administrator Classes as to pertinent facts related to their policy coverage and amounts paid for comprehensive or collision loss claims resulting in the total loss of their autos; (2) not attempting in good faith to effectuate prompt, fair and equitable settlements of Plaintiff's and members of the Total Loss and National General Claims Administrator Classes' total loss claims; and (3) compelling Plaintiff, on behalf of himself and the Total Loss and National General Claims Administrator Classes, to institute this lawsuit to recover amounts due under the insurance policies by offering substantially less than the amount to be ultimately recovered in this lawsuit.

120. Specifically, Defendants made payments to Plaintiff and members of the Total Loss and National General Claims Administrator Classes for their total loss claims under their EPC or EIC policies falsely portraying that the amounts paid as the amounts due to them under their EPC

or EIC policies, when those amounts did not include the full applicable sales tax for the total loss auto as required by the EPC or EIC policies.

121.    Additionally, Defendants falsely misled Plaintiff and members of the Total Loss and National General Claims Administrator Classes into believing that the correct, applicable sales tax for the totaled auto is being paid as part of their total loss claim settlement as required by the standardized form insurance policy.  Defendants did this by engaging in a uniform and common practice and plan of sending Plaintiff and members of the Total Loss and National General Claims Administrator Classes written settlement statements purporting that EPC or EIC would pay the full and correct applicable sales tax for the totaled auto as part of the payment for the total loss claim. Despite sending these settlement statements to Plaintiff and members of these Classes, EPC and EIC do not, in fact, pay the full and correct applicable sales tax as part of the total loss claim settlement as required by the standardized EPC and EIC policy provisions.  In fact, as demonstrated by Plaintiff's claims representative, EPC and EIC paid no sales tax whatsoever for totaled leased autos on Plaintiff's and other members of those Classes who had leased autos because EPC and National General had a policy or practice, devised by EPC and EIC, of not paying applicable sales tax on totaled leased autos.

122.    Defendants furthered their scheme to deceive Plaintiff and members Total Loss and National General Claims Administrator Classes into thinking the correct sales tax is being paid as part of the claim settlement by also sending them market valuation reports generated by third-party vendors corroborating Defendants' misleading sales tax statements on the settlement communication.  For members of the Classes like Plaintiff, whose totaled auto was leased, Defendants also failed to communicate to Plaintiff and those members of the Classes that they were not paying the full settlement statement payment amount to their lessors.  Defendants further failed to communicate to Plaintiff and those members of the Classes that payment of sales tax should be

sent directly to them.  EPC further allowed the lessor to think that EPC was paying the sales tax for the total loss leased vehicle to Plaintiff and those Total Loss Class members.  Indeed, for example, Plaintiff's lessor sent EPC, through its National General claims administrator, a letter indicating it was accepting a lesser amount for the total loss leased auto that did not include sales tax and expressly stating that "***Any refund by your company for sales tax and title fees should be sent directly to the customer***." Exhibit 6 (emphasis added).  This deceptive and misleading conduct resulted in EPC and EIC pocketing money owed on Plaintiff's and members of the Total Loss and National General Claims Administrator Class that EPC and EIC have no right to keep.

123.    Indeed, Defendants have engaged in a common scheme and civil conspiracy designed to mislead and deceive Plaintiff and members of the Total Loss Class and the National General Claims Administrator Class.  Defendant National General, by processing claims in the deceptive manner set forth herein, aided and abetted Defendant EPC in deceiving and misleading Plaintiff and members of the Total Loss and National General Claims Administrator Classes.

124.    The misleading and deceptive payments, settlement statements and market valuation reports sent by Defendants, as well as Defendants' omissions as described herein, are consumer oriented as they are directed toward and broadly impact consumers insured in New York. Defendants' practice of withholding and misrepresenting pertinent information about required insurance coverage is part of a pattern of conduct with respect to Defendants' claim settlement practices throughout New York, and constitutes a deceptive and unfair act directed toward consumers in the State of New York.

125.    The foregoing deceptive acts and practices are misleading in a material way because it deprives Plaintiff, the Total Loss Class members, and the National General Claims Administrator Classes the full benefit of their personal auto insurance policies and results in systemic and substantial underpayment of their total loss claims.

126.    Defendants' deceptive practices have caused Plaintiff, Total Loss Class members and National General Claims Administrator Class members injury by misleading them as described herein, thereby enabling Defendants to substantially underpay to settle Plaintiff's, Total Loss Class members' and National General Servicer Class members' total loss claims.

127.    Defendants violated GBL § 349 by acting deceptively toward Plaintiff, Total Loss Class members and/or the National General Claims Administrator Class members who have standardized personal auto insurance policies issued by EPC and EIC in New York.  Defendants' conduct violating GBL § 349 have been knowing and/or willful.

128.    As a result of these deceptive practices, Plaintiff, the Total Loss Class members, and the National General Claims Administrator Class members are entitled to actual damages or $50.00, whichever is greater, three times actual damages, and reasonable attorneys' fees, as well as costs, pre-judgment and post-judgment interest, declaratory relief, injunctive relief and other relief as appropriate.

## COUNT V - NEGLIGENCE

129.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

130.    Plaintiff brings this count individually and on behalf of the Total Loss Class members against Defendant Esurance Property and Casualty Insurance Company.  Plaintiff also brings this count individually and on behalf of the National General Claims Administrator Class against Defendant National General Insurance Company.

131.    Defendant EPC is the auto insurer for Plaintiff, the members of the Total Loss Class, and those members of the National General Claims Administrator Class to whom EPC issued a personal auto policy.  EPC owed Plaintiff and members of the Total Loss and those members of the National General Claims Administrator Classes to whom EPC issued a personal auto policy a duty

of care to administer their total loss claims with reasonable care and to act in conformance with the provisions of their policies.

132.    Defendant National General is EPC's and EIC's claims administrator. As such, National General was charged with the duty to act with reasonable care to correctly process and administer in conformance with the provisions of their policies, Plaintiff's and other members of the Total Loss and National General Claims Administrator Classes' total loss claims on behalf of EPC and EIC, respectively.  National General owed Plaintiff and members of the Total Loss and the National General Claims Administrator Classes a duty of care to process and administer their total loss claims with reasonable care and to act in conformance with the provisions of their policies.

133.    EPC's and EIC's personal auto policies issued to Plaintiff and members of the Total Loss and the National General Claims Administrator Classes each expressly states that EPC's and EIC's monetary payment on a claim for total loss auto will include the "applicable sales tax" or the "sales tax that applies" to property subject to the claim, *i.e.,* the auto.

134.    EPC breached its duties owed to Plaintiff and members of the Total Loss Class and those members of the National General Claims Administrator Class to whom EPC issued a personal auto policy by authorizing or making payments to them for their total loss claims under their EPC policies that did not include the full applicable sales tax for the total loss auto as required by express provisions of their EPC policies.

135.    National General breached its duties owed to Plaintiff and members of the Total Loss and the National General Claims Administrator Classes by authorizing or making payments to them for their total loss claims under their EPC or EIC policies that did not include the full applicable sales tax for the total loss auto as required by express provisions of their EPC or EIC policies.

136.    Defendants further breached their owed to Plaintiff and members of the Total Loss and the National General Claims Administrator Classes by providing them with written settlement statements and market valuation reports inaccurately portraying the amounts Defendants were or would be paying for their total loss claim as described throughout this Complaint.  Defendants further breached their duties by failing to correct the misleading or otherwise inaccurate written settlement statements and market valuation reports.

137.    Indeed, Defendants have engaged in a civil conspiracy to mislead and deceive Plaintiff and members of the Total Loss Class and the National General Claims Administrator Class.  Defendant National General, by processing claims in the deceptive manner set forth herein, aided and abetted Defendant EPC in deceiving and misleading Plaintiff and members of the Total Loss and National General Claims Administrator Classes.

138.    As a direct and proximate result of Defendant's failure to provide Plaintiff and members of the Total Loss Class and National General Claims Administrator Class with the payment due to them for their total loss claims and providing them with written settlement statements and market valuation reports inaccurately portraying the amounts Defendants were or would be paying for their total loss claim as described throughout this Complaint, Defendants have injured Plaintiff and members of the Total Loss Class and National General Claims Administrator Class.  Specifically, as a result of Defendants' conduct, Plaintiff and the members of these two Classes' claims were systematically and substantially underpaid for their total loss claims.  Plaintiff and members of the Total Loss Class and National General Claims Administrator Class have incurred damages in an amount to be proven at trial.

## COUNT VI – TORTIOUS INTERFERENCE WITH CONTRACT

139.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

140.    Plaintiff brings this count individually and on behalf of the National General Claims Administrator Class members against Defendant National General Insurance Company.

141.    Plaintiff and members of the National General Claims Administrator Class all had valid standardized personal auto policies issued by EPC or EIC.  Plaintiff and members of the National General Claims Administrator Class all had an identical or materially similar provision, wherein the insurer expressly promised to pay the "applicable sales tax" or "sales tax that applies" for the damaged or stolen auto if Plaintiff and National General Claims Administrator Class members made a comprehensive or collision coverage loss claim under their policy, the claim was approved, and the insurer paid the loss claim in money.

142.    National General acted as the claims administrator for Plaintiff's and members of National General Claims Administrator Class's loss claims they submitted to EPC and EIC.  As such, National General had knowledge of and was familiar with the standardized policies EPC and EIC issued to Plaintiff and the National General Claims Administrator since National General was charged with administering the claims in accord with the express terms of the policies. Thus, National General knew Plaintiff's and the other National General Claims Administrator Class members' policies all contained an identical or materially identical express provision promising payment of sales tax for the damaged or stolen autos as part of a loss claim under the policy's comprehensive or collision coverages.

143.    National General knowingly entered into a voluntary agreement with a common plan and design to deprive Plaintiff and Class members of such sales taxes.

144.    National General intentionally caused Plaintiff's and members of National General Claims Administrator Class's insurers to breach their policies with Plaintiff and the National General Claims Administrator Class.  National General did so by following EPC's and EIC's common plan and practice of sending Plaintiff and the National General Claims Administrator

Class misleading and deceptive written settlement statements on behalf of their insurers. These written settlement statements were misleading and deceptive in that they represented to Plaintiff and the National General Claims Administrator Class that the full and correct applicable sales tax for the totaled auto will be paid as part of the claim settlement or otherwise inaccurately portrayed the amounts owed. National General furthered this deception by also sending Plaintiff and the National General Claim Administrator Class members market valuation reports it had a third-party vender to validate the misleading sales tax information on the written settlement statement it sent, which is also part of EPC's and EIC's common plan and practice After disseminating the misleading or inaccurate information concerning payment of sales tax as part of Plaintiff's and other National General Claims Administrator Class members' claim settlement, National General either did not pay of the full applicable sales tax owed for Plaintiff's and other National General Servicer Class members' claims or caused this to occur. National General had no justification to cause this breach of EPC's and EIC's standardized personal auto policies, as the insurance policies explicitly provide that payment of the applicable sales tax for the totaled auto is to be included as part of the settlement for total loss claims paid in money.

145. As a result of National General's conduct and in furtherance of their common plan, Plaintiff and the National General Claims Administrator Class did not receive the full benefit of their contracts with their insurers because the correct and full applicable sales tax was not paid as part of their total loss claim settlement, resulting in systemic and substantial underpayment of Plaintiff's and National General Claims Administrator Class members' total loss claims. Thus, Plaintiff and the National General Servicer Class have incurred damages in an amount to be proven at trial.

## COUNT VII – CONVERSION

146. Plaintiff incorporates by reference the allegations contained in the foregoing

paragraphs of this Complaint.

147.    Plaintiff brings this count individually and on behalf of the members of the Total Loss Class against Defendant Esurance Property and Casualty Insurance Company.  Plaintiff, on behalf of himself and the Total Loss claims, asserts this count in the alternative to Count II for breach of contract.

148.    Plaintiff and members of the Total Loss Class have an ownership interest and right to the applicable sales tax owed for the totaled auto as part of payment for their total loss claims brought under the comprehensive or collision coverage provisions of their standardized auto policies EPC issued to them.

149.    EPC has intentionally and wrongly asserted dominion over this money by failing to remit payment of such to Plaintiff and the Total Loss Class members and, instead pocketing it to use for its own purposes.

150.    As a direct and proximate cause of EPC's conduct, Plaintiff and the Total Loss Class members suffered damages in the amount of the full applicable sales tax owed to them for the totaled auto, and in the amount of consequential damages resulting therefrom.

### COUNT VIII – AIDING AND ABETTING EPC'S AND EIC'S  TORTIOUS CONDUCT

151.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

152.    Plaintiff brings this count individually and on behalf of the National General Claims Administrator Class members against Defendant National General Insurance Company.

153.    National General aided and abetted EPC and EIC by providing substantial assistance and/or participating in the tortious acts committed by EPC and EIC as specified throughout this Complaint by, among other things, sending Plaintiff and the National General Claims Administrator Class misleading and deceptive written settlement statements on behalf of EPC and EIC; sending

Plaintiff and the National General Claim Administrator Class members market valuation reports prepared by third-party venders to validate the misleading sales tax information on the written settlement statement; and facilitating EPC's and EIC's failure to the full applicable sales tax owed for Plaintiff's and other National General Servicer Class members' claims. National General acts of aiding and abetting cause those policy contracts to be breached and Plaintiff and National General Claims Administrator Class members to not receive the full benefit of their standardized personal auto policies with their insurers.

154. National General had actual knowledge of the standardized personal auto policies between EPC and/or EIC and Plaintiff and the National General Claims Administrator Class.

155. But for National General's substantial assistance, the fraudulent scheme would not have been able to be carried out, and Plaintiff and National General Claims Administrator Class members would not have suffered damages described above.

156. As a result of each National General's aiding and abetting, Plaintiff and National General Claims Administrator Class members suffered damages as they did not receive the full benefit of their policy contracts with their insurers because the correct and full applicable sales tax was not paid as part of their total loss claim settlement, resulting in systemic and substantial underpayment of Plaintiff's and National General Claims Administrator Class members' total loss claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the members of the Classes request an award, relief and entry of a judgment, as follows:

A.    An order certifying that this action is properly brought and may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure; that Plaintiff be appointed representative of the Class; and that Plaintiff's counsel be appointed

counsel of the Class.

B.  Compensatory damages, for each Cause of Action for which they are available, in an amount determined at trial.

C.  Actual and/or statutory damages allowable under New York's GBL § 349, and treble damages should the Court find that Defendants' actions were willful or knowing.

D.  Consequential, statutory and punitive damages to the extent permitted by applicable law, in an amount determined at trial.

E.  An Order declaring Defendant EPC is required under the terms of its standardized automobile insurance policy described herein to pay the applicable sales tax on first-party comprehensive or collision coverage loss claims for damaged or stolen automobiles as part of the monetary settlement of the claim when the claim is approved, the automobile is declared a total loss, and EPC decides to pay the claim in money.

F.  An Order declaring Defendants' conduct to be unlawful, deceptive and in violation of the parties' policy contracts and applicable law, and enjoining Defendants from continuing the unlawful, deceptive practices described throughout this Complaint.

G.  An Order awarding Plaintiff his costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest for each Cause of Action for which they are available.

H.  An Order requiring an accounting for, and imposition of, a constructive trust upon all monies Defendants received as a result of the misleading, fraudulent and unlawful conduct alleged herein.

I.  Such other and further relief as may be deemed necessary or appropriate for any of the claims asserted.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 7, 2024

**FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**

By:  /s/ Joseph N. Kravec, Jr.
     Joseph N. Kravec, Jr.

Ruairi McDonnell, Esquire
(*Pro Hac Vice* to be filed)
Kaitlyn M. Burns, Esquire
(*Pro Hac Vice* to be filed)
29 Broadway, 24th Floor
New York, NY 10006-3205
Telephone: (212) 952-0014
Email: jkravec@fdpklaw.com
Email: rmcdonnell@fdpklaw.com
Email: kburns@fdpklaw.com

and

429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007

Antonio Vozzolo, Esquire
Andrea Clisura, Esquire
**VOZZOLO LLC**
499 Route 304
New City, New York 10956
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com
Email: aclisura@vozzolo.com

-and-

345 Route 17 South
Upper Saddle River, New Jersey 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com

Edmund A. Normand
(*pro hac vice* to be filed)
**NORMAND PLLC**
3165 McCrory Place, Suite 175
Orlando, FL  32803
Telephone:  (407) 603-6031
Facsimile:  (888) 974-2175
Email:  ed@normandpllc.com

***Counsel for Plaintiff and
the Proposed Classes***